Good morning. May it please the court, Neal Houston, Deputy Attorney General, appearing for the State of California, California Gambling Control Commission, and Governor Arnold Schwarzenegger. I'd like to reserve five minutes for rebuttal, please. Your voice is a little soft and because this courtroom has so much marble, it might help if you just speak up slightly. I'll stand a little closer as well. Thank you. That works. I'd like to make several brief comments on the two primary questions we feel are before the court this morning. The first question is a relatively routine one concerning the standards for granting summary judgment. It is made important by the second question before the court, which is decidedly not a routine question. And that is the question of the scope of relief that the district court was that were excused by this court previously, and then chose not to participate in this action. As to the first question, once the court concluded that on the basis of conflicting evidence before it, that it could not determine the party's intent in 1999, when the 1999 tribal state gaming compacts were entered into, it is the state's view that the motion should have been denied at that time and the matter set for trial. The district court should not have proceeded with the analysis that it subsequently did. Given the ambiguity of the language of section 4.3.2.2 a one, the section in question in this appeal, determining the intentions and understandings of the parties at the time the compacts were formed should have been the main priority in order to determine the meaning of that section. As to the second question, which is the proprietary of extending relief to the 40 compact tribes that were not parties to this action, the state contends that the basis of this court's rejection of the state's earlier rule 19 motion as reflected in the Calusa one decision precludes extending relief to these non-parties. And that is because if the tribes are holders of separate bilateral compacts with the state and are therefore entitled to separately litigate the terms of those compacts with the state, the state believes that they must then separately litigate the terms of those compacts with the state. Let me just get this straight under that agreement or reading, then this particular provision could have different meanings and different litigation. Yes, that's true. It could have different meanings for different compacts. So the same language, if it were identical, depending on which district court and which tribe could come out with different results, do I understand that as the state's position? Not so much based on which district court, but based upon the particular facts and defenses specific to that action. Because one thing, the undisputed evidence that's before the court in this case indicates is that the nature of communications and negotiations between the tribes and the state in 1999 were not uniform, that some tribes participated more than others, some tribes and their representatives. That's really not the answer to my question. I just want to understand, I'm not going to try to argue with you. I'm just trying to understand your position. And that is that the same language could be judged to have different meaning, is that your position? If that is the understanding of the parties at the time of contracting, as shown by the evidence of those particular cases, yes. Mr. Houston, if I can, let me take you back to the first issue for a moment. As I read the State's extrinsic evidence, the Norris Declaration and the Chang Declaration, they lead to only one conclusion, which is that there was a deal that the total amount of the compacts would be $44,000 and something, depending on whether you go with the press release or the affidavit, but $44,400, let's say. Can you articulate an interpretation of the compact provisions that produces that number? The question, Your Honor, is whether an articulation of the compact can be made that supports the number that was adopted by the Gambling Control Commission in 2002, because that is the number that has been attacked in this litigation by the plaintiff tribes. Is that the number you're asserting on appeal? That's true. The 32,151 number is the number the State has asserted throughout this litigation. Now that's not the number supported by the Norris or Chang declarations, correct? That's true. And that's a number, according to your version of events, that was arrived at after the fact as a practical accommodation of what the sides accounting group did. It was a practical accommodation, but also an interpretation of the language of the section. But if it occurred after the fact, then it necessarily is not the intent of the parties in September of 1999, correct? That is true. Then we can't adopt that if your argument is that we need to go with the original intent. The argument that the state is making is that the commission's number adopted in 2002, the reasonableness of that interpretation of the compact should be judged in light of the context of the negotiation of the compact in 1999, and that the commission's number was a good faith effort to adhere as closely as possible to the extent or the extent of the expansion of class three gaming that was intended by governor Davis in 1999. While at the same, those numbers, what I'm trying to figure out is what does that number really mean to your argument? Because the number of machines in operation, plus your number of 32,151 already exceeds the number in the extrinsic evidence of 44,798. Is that right? Yes. That's true, Your Honor. So even if this is a good faith effort for the state to come up with a number, what does that extrinsic evidence have to do with how the contract language is interpreted? Your Honor, the, if the intention of the parties in 1999, as indicated by the extrinsic evidence and indicated by the fact that the state made its intentions abundantly clear at that time, and there's no evidence before the court that the tribes made their intentions clear at all at that time, that that should stand as a background, a context, if you will, for the reasonableness of the number later adopted by the commission in attempting to deal with the problem created by the issuance of licenses by the tribes to themselves through the sides accountancy process, something that the state at that time, two years later, did not wish to achieve by revoking or rescinding licenses that have been issued through that process and that the state then through that process, after analyzing all of the various interpretations that have been put forward by the various parties and entities up to that time, elected to enlarge the license pool beyond that originally intended by Governor Davis. And it is our feeling that that should not be used as a basis for now further enlarging the license pool to an interpretation, which it's undisputed, no party had contemplated in 1999. Where's the, the intention of Governor Davis? What are the documents that in your mind go to that issue? The Norris declaration, as Norris was acting as Governor Davis's agent for the negotiations in 1999. And was that the document that was submitted on reconsideration? Yes. Well, no, it wasn't reconsideration. It was in supplemental briefing. When he, and he said, here's my ruling. Now you can have supplemental briefing. No, the judge did not rule at that time. He invited supplemental briefing on the subject of the license pool based upon Colusa and Picayune's introduction of their alternative formulation. Well, let's go to the formula, which we haven't really talked about yet. And it seems that the first part of 4.3.22A1, everybody agrees on. So that we're safe on one part, correct? And that's the 350 times 84. So my, my question on interpreting the second part of that language is it seems that now both you and the tribes, although I'll have to clarify with them, agree that the second part of that is restricted to tribes that did have compacts. Is that right? That's my understanding. Okay. And then you further subdivide those tribes into the ones with zero, the ones between one and 350, and then the other tribes, correct? That's right, Your Honor. And so does it, does this boil down to, depending on how you manipulate the formula, does it boil down to a dispute as to whether or not you include the so-called zero based tribes into the formula? That is the distinction between the two interpretations that have been put before the court. Yes, Your Honor. Mr. Houston, if I understand what you're saying this morning, as a matter of summary judgment practice, if Judge Damrell had assumed the Norris and the Chang affidavits to be true, had drawn all reasonable inferences from them, the number that would have resulted from that exercise is not the number you are now arguing should be adopted, correct? That is true. So why would there need to be a trial? Let's assume the jury believes Chang and Norris, and they say to the judge, we agree there was a $44,000 cap. You're saying that doesn't, that doesn't decide the question. What somebody has to do is look at the contract and ask what's a reasonable interpretation, which is precisely what Judge Damrell did. Well, Judge Damrell did that after rejecting any effort to determine what the actual understandings of the parties were in 1999. But even if he had assumed you were right, you had the actual understanding correctly reflected in the Norris affidavit, he still couldn't have adopted the Norris number, according to what you're saying today. The state did not seek to persuade him to adopt the Norris number. State was defending the commission's number, which came later. But the main problem with that is the number, the number doesn't track the language in any respect, or is there a way to back that number into the formula? Which number are you referring to now? Any of your numbers. The number applied by the commission tracks the language because it applies the second part of the equation to mean the lesser number authorized, meaning the number of devices actually operated by the 16 tribes that were operating some devices on September 1st, 1999. And the logic of that interpretation is that it is not regular usage of the language to authorize zero devices, since there is no mandate for anyone to have devices at all. And that was the basis of the commission's adoption of that reading of the language. All right. Did you want to save some time for rebuttal? I did. I wish you would save, save five minutes. I seem to be too short now. Could I stop now and reserve the rest of my time? Of course. Any other questions? No, that's fine. That's fine. Judge Hall, anything? No, that's fine. Thank you. Good morning. May it please the Court. Jay Shapiro on behalf of the Colusa Indian Community. I suspect the panel has many questions, but I will launch into responding to a couple of Mr. Houston's points. Let me just clarify. Are you sharing your time with Picayune? I am, Your Honor. My intention is to leave Picayune in about five or six minutes. All right. The panel really got to the nub of what's going on here just a second ago before Mr. Houston sat down. What the state wants to do is to admit extrinsic evidence to show an interpretation that the state doesn't even advocate and that the language cannot support. The parole evidence rule tells us that we cannot admit extrinsic evidence for a meaning to which the language is not susceptible. So even if we thought that the Norris Declaration and the Chang Declaration were credible evidence, and of course, we objected to the admissibility of evidence in both of those declarations before the district court, even assuming that it got past those objections, the evidence would not be admissible to show the interpretation the state is advocating. Judge Damrell in this case was only presented with one interpretation that he felt the language was susceptible to, and that was the so-called alternative formulation that leads to a license pool of 42,700. So do you abandon the notion that the number 84 should be plugged into the second half of the equation? On appeal, yes. Okay. Yes, Your Honor. You agree that Judge Damrell did not arrive at his conclusion by saying that the language was not susceptible to the interpretation that the state was advocating.  I'm sorry. Could you put that one more time, Your Honor? Your argument, I think, is that we shouldn't consider the state's extrinsic evidence because there is no reasonable interpretation of the contract that it supports. That's correct. That wasn't the basis upon which Judge Damrell dealt with that evidence, correct? Well, I don't believe that Judge Damrell concluded that the language was not susceptible to the interpretation that the state was advocating. So I'm not completely clear whether Judge Damrell actually admitted the extrinsic evidence under the two-step parole evidence rule or not. But you will agree he didn't say he was excluding it. Yes. Yes. Let me tell you where I have trouble with Judge Damrell's mathematics, if I might. Sure. Okay. The language of the two-part formula, 4.3.22, is talking about aggregate numbers, in effect. Correct. Okay. And then it talks about the difference between 350 and the lesser number. Correct. And then when you go to the compact 4.3.1, of course, it talks about a single tribe. Correct. Okay. My difficulty with Judge Damrell is I think he didn't really, as what I'll call, bulk it up appropriately from a mathematical standpoint. So when he says 350 minus the lesser number, which he gets by multiplying the 39 tribes, that's a logical inconsistency, it seems to me. And at a minimum, one ought to take the tribe by tribe, which the ones operating more than 350 would net zero. So the ones operating zero would net 350, and the ones between one and 350 would net something between their number minus the 2,900. Do you see where I'm going? Yes, I'm following. And so it seemed to me that, and I realize we're on to no-will review, but I'm just having trouble taking 350 as a singular number without multiple tribes and then applying it. Can you explain to me why you think Judge Damrell was right, or why my suggestion makes mathematical sense? Sure, Your Honor. As to Judge Damrell's interpretation, which is, of course, the one that we advocated, we believe that it complies, if you will, is consistent with the plain 1. When we talk about the lesser number authorized, that's in the context of all compact tribes, right? The introductory language to this section talks about the aggregate. So when we're talking about the lesser number authorized, we're talking about the lesser number authorized for the tribes in the aggregate. When we go to 4.3.1, the lesser number in the aggregate for tribes operating fewer, 350 or fewer machines is simply 350 times those number of tribes. So 350 times 39. Right. But the difference between, even if you go that route, the difficulty is that 32849 number that are operating, that gives you the delta between the 350 times 39 minus those, because isn't the whole purpose of this part of the formula really to bring you up to 350 times 39? I see what Your Honor is saying, certainly, and I'll just mention as an aside that the interpretation that I think you're suggesting to me is one that we discussed in a footnote in our supplemental brief, that would be footnote six, where we, as you might put it, put it on a tribe by tribe basis. Ultimately, we thought that the interpretation that we're defending here on appeal is the better one. Again, I understand what Your Honor's point is, but again, the lesser number authorized, we took as direction to look in the aggregate. Okay. So if you, but if you look at the aggregate, why haven't you taken out the amount that we're already operating, 2849? Because if you took, you see the problem with the second part, 4.3.1, it's a little bit different. The other one is a aggregate, because you're aggregating up above. So all I'm saying is if you're going to aggregate, don't you have to aggregate apples and apples? I take your author, excuse me, I take Your Honor's point. I think perhaps we're reading the second step, if you will, of 4.3.2.2a1, which I'll just call for shorthand from now on the licenseable formula a little bit differently. We're focusing strictly on the second phrase of that. So not so much the difference between 350 and this, but simply what is the lesser number authorized? I know, but what would, why would it make any sense to take 350 minus an aggregate number? That's what I'm asking you. Well, naturally, when I hear that question posed to me by the Ninth Circuit, I wonder the same thing myself. I'm just wondering as a matter of math. I think that the interpretation that we've been advocating is true to the language here, but I take your author's point about the tension between sort of adopting an aggregate on the one hand, a tribe by tribe approach on the other. But let me quickly speak to the interpretation that we've been discussing here. If we did take a tribe by tribe approach, and we talked about the difference between 350 and the lesser number authorized for each tribe, I think we've made clear, but just to be sure, we certainly advocate the consideration of all 39 tribes. The zero-based tribes also. Exactly. The zero-based tribes also. I think there's ample support in the language for this. Again, the license draw formula talks of all compact tribes. So I think that that provides or directs us to the relevant population. 4.3.1 talks about the tribe. I think in the context, it's pretty clear that we're talking about the tribe whose compact this is. So again, I don't think that it makes sense to draw the distinction that the state draws to distinguish between tribes operating fewer than 350, but some number, and zero, because what would be the point of distinguishing between tribes that operate zero, but a tribe that operated one would be counted? I can't think of a good reason for making that distinction. Again, 39 tribes were authorized to operate machines under their compacts, whether or not they happened to be operating any at the time. They ought to be included here. Are you going to address the applicability of whatever comes out of this to the tribes as a whole, which is a point the state made as one of its two points? Sure. At the beginning of Mr. Houston's time, the panel raised this idea of, is the state actually suggesting that we could have two different size pools depending on what tribes we're dealing with, or conceivably 50 some odd different pools if all the tribes had different interpretations? I think as a matter of common sense, that can't really stand, Your Honor. So if we have a judicial determination of what the size of the license pool is, I think common sense tells us that that has to apply the way that it was intended to apply. And the state even says in its brief, the state's intent was to have a single pool for all the tribes. Moreover, the compact, I think, reasonably clearly contemplates draws being open to all tribes that haven't reached the 2,000 machine limit. Could you explain one other thing that I couldn't quite figure out? And that is, some tribes have been renegotiating to resolve their situation with the state. Yes. Whatever number comes out of this, if hypothetically it applies to all tribes, what happens to those tribes? Only applies to tribes that have the 1999 compact, Your Honor. So a tribe that has a future compact doesn't have a 1999. That's correct. Unaffected. And just to note something about that, sometimes the state suggests that adopting the interpretation that Judge Damrell found persuasive and that we're defending on appeal would somehow undermine a policy of the state to maintain reasonable limits on gambling. I think the fact that the state has negotiated either 12 new or amended compacts, and these allow for anywhere from 5,000 additional gaming devices to unlimited gaming devices, shows that whatever policy, strong policy, might have been in place in 1999 when the compact was negotiated can no longer be said to be vindicated by maintaining the limit that the state advocates. Thank you. If there are no more questions, I'll... No, I think we'll hear from Mr. Houck or is it Ms. Houck? He's used up all your time, but I'll give you five minutes and then we'll add some time to Mr. Houston's rebuttal. Good morning, Your Honors. If you could just change that to five, just give us a second to do that. Thank you. Good morning, Your Honors. My name is Darcy Houck. I'm with Fredericks, Peebles & Morgan on behalf of the Picayune Rancheria of Chichancee Indians, plaintiff intervener, as to the second claim for relief in the Calusa matter. I would like to state that we concur with the statements of Mr. Shapiro and believe that the district court did correctly decide this case in a way that is correct as it provides a lawful, operative, definitive, and reasonable interpretation of the compact. The alternative formula also most accurately follows the language of the compact, giving the words their ordinary meaning and is consistent with the principles that ambiguities in the agreement are to be construed against the drafter. We believe that the district court appropriately considered the different and that the extrinsic evidence that the state raises here on issue and appeal does not go to support the formula that they're advocating. I don't want to repeat what's already been argued at this point, but would also just reiterate that as to the language of the compact, the state in its brief acknowledges that these are all mirror compacts and that as to the license pool, they're dependent on each other. There's a process set out for issuing licenses in the compact that includes all of the 99 compacts and there's a specific criteria in which those licenses are issued. So that draw system is contingent on issuing a draw as to all eligible tribes. Thank you. Thank you. I'd like to address a couple of points that Mr. Shapiro made. The first one is the question of whether the extrinsic evidence submitted by the state is admissible to support the commission's interpretation of the license pool number goes back to the fact that it is the commission's number that is under attack here. It is the commission's number among several others that judge Damrell apparently felt were reasonably supported by the language of the compacts. Although in the end he did prefer the alternative formulation proposed by the tribes because there was a finding that the language was ambiguous. Extrinsic evidence was admissible. The extrinsic evidence offered by Judge Norris and Judge Chang goes to set the context for a determination of the reasonableness of the interpretation made by the commission. The 31 or 32 151 number. Mr. Houston if I can interrupt you for a minute on that point. California law says that extrinsic evidence is admissible only if it supports a reasonable interpretation of the contract correct. Yes. If we find that the forty four thousand dollar forty four thousand number is not a reasonable interpretation of the contract and that doesn't that mean that the Norris extrinsic evidence is inadmissible. I don't believe so Your Honor. I believe that it goes to set the context for the interpretation of the commission's later drive number. So if there was a jury trial well it wasn't going to be a jury trial. I understand it was a bench trial. If there's a trial in this case doesn't Judge Damrell do exactly in that trial what he did in the motions for summary judgment. It is conceivable that that could happen but I think that we recognize that the evidence that would be adduced to trial would be richer and more nuanced and probably more comprehensive than the evidence that was before the court on summary judgment and a different outcome might be achieved with respect to finding a common understanding between the parties in 1999. Given that opportunity one thing I would like to comment upon is in terms of the reasonableness of the alternative formulation and the sort of mathematical logic of it I would call the court's attention to the fact that the alternative formulation proposes deducting three hundred and fifty from a vastly huger number in forty two thousand seven hundred and it's very hard to think of any sort of reasonable explanation for why a formula would have that provision. Why would three hundred and fifty be deducted from a number somewhere above forty two thousand makes no sense. It seems to state that that number that portion of the interpretation was to operate on a more micro level and to deal with the sixteen tribes individually the sixteen tribes operating less than three hundred and fifty devices and to adjust the total license pool accordingly. Now to sum up I'd like to say that this court's decision will set the ground rules for any subsequent litigation between the state and tribes over the terms of the ninety nine compacts and it may also be expected to affect the way in which the successors to the ninety nine compacts are negotiated later in this decade. And what we ask is that these ground rules comport with the existing law concerning standing scope of relief and the effect of judgments and in particular the application of res judicata and collateral estoppel and thereby create a level playing field for the parties both with respect to this compact and to the compacts that will succeed them. Thank you. I thank both counsel for their arguments this morning. The case of Cacio versus California is submitted. I also want to thank all of you for your briefs. They're very helpful and very clear and we know where the intersection of the disagreement is but I thought all the briefs were very helpful because it's a very complicated thing and we know you all have been at it for many years. Thank you.
judges: Campbell, Hall, McKeown